Robert Zimmerman
329 Sandpiper Lane
Hampstead, NC  28443
Tel # 910-233-1235
Email: bobzimmerman@usa.com

Case: 1:23-cv-02139 JURY DEMAND
Assigned To : Unassigned
Assign. Date : 7/21/2023
Description: Pro Se Gen. Civ. (F-DECK)

| | |
|---|---|
| Robert Zimmerman | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Mark Zuckerberg | ) |
| Meta Platforms, Inc. | ) |
| John and Jane Does | ) |
| Defendants. | ) |

VERIFIED COMPLAINT
FOR DAMAGES AND
INJUNCTIVE RELIEF

JURY TRIAL DEMAND

## VERIFIED COMPLAINT

Robert Zimmerman, the Plaintiff herein, alleges the following:

1. Pursuant this Court's Order in Case No. 23-01316 that dismissed and closed Plaintiff's
   Complaint without prejudice for excessive length and granted Plaintiff permission to
   file a shortened replacement Complaint, Plaintiff is  hereby filing this new substantially
   shortened  Complaint and has trimmed it from the prior Complaint from 223 pages to
   39 pages, excluding a few pages for verification, jury demand, and certificate of
   service.

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

2. It is unlikely a defense of *res judicata* would prevail because other than Case No. 23-01316 as described in para. 1 above, the only other time Plaintiff sued Defendant Mark Zuckerberg that lawsuit filed in California was consolidated by the District Court into a multi-district class action from which Defendant Zuckerberg was dismissed without comment and upon settlement of that case Plaintiff was given an option to opt out of the settlement, which he did, and the presiding judge ruled that nothing in the settlement would adversely impact Plaintiff continuing with his claims as he saw fit.

3. In 2022 Facebook Platforms, Inc. changed its name to Meta Platforms, Inc. ("Meta Platforms"), which owns Instagram, which as reported on June 8, 2023 connects a vast pedophile network. Not a day passes without another Meta Platforms horror story being reported.

4. Without giving even a single reason for doing so, Defendants permanently banned Plaintiff from using its platforms and in doing so caused Plaintiff to suffer extensive monetary, reputational, and emotional and physical harm.

5. Plaintiff has never condoned or promoted violence anywhere and has never been accused of promoting or condoning violent behavior.

6. Section 230 of the Communications Decency Act is blatantly unconstitutional.

7. Meta Platforms is not now and has never been an "Internet Service Provider" as that term is used in Section 230.

8. Defendants intentionally and maliciously misrepresented to Plaintiff that Defendants would protect the privacy of Plaintiff's tendered personal information.

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

9. Instead, Defendants encouraged application developers and thousands of other third-parties to collect, use, monetize, and sell Plaintiff's personal information.

10. Although Defendants were aware as early as 2014 that Plaintiff's personal information was being used, abused, and sold by thousands of third-parties, Defendants by failing to discourage third-parties from accessing Plaintiff's personal information encouraged future abuses by them and therefore caused Plaintiffs short-and-long-term great harm .

11. Defendants intentionally made it impossible for Plaintiff to control how they shared his personal information.

12. Instead of allowing Plaintiff to control access and use of his personal information by thousands of third-parties, Defendants made it impossible for Plaintiff to detect which third-parties had accessed and were using his personal information.

13. Defendants failed to disclose to Plaintiff the Cambridge Analytica massive breach of approximately 87 million Meta Platforms users' personal information even though Defendants first became aware in 2015 that Cambridge Analytica had obtained Plaintiff's personal information.

14. Instead, after an investigation into the matter, Defendants finally confirmed that Meta Platforms users personal information had been improperly obtained from them and then sold to Cambridge Analytica who used it to help sabotage presidential and other elections.

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

15.    So indifferent to the Cambridge Analytica breach of their users personal information, Defendants took Cambridge Analytica at its word when they stated they had deleted the personal information when, in fact, Meta Platforms staffers that were embedded in the 2016 Trump presidential campaign were working in tandem with Cambridge Analytica staffers to use Plaintiff's personal information to target pro-Trump propagandistic disinformation to susceptible voters.

16.    By failing to inform Plaintiff that certain companies could easily override Meta Platforms' personal information privacy settings, Defendants also failed to inform Plaintiff that it granted certain companies, many of whom were mobile device makers, special permissions that enabled those companies to access Plaintiff's personal information by overriding Meta Platforms' privacy settings.

17.    Zuckerberg often has admitted to his and Meta Platforms' unlawful conduct, calling that unlawful conduct "his [Zuckerberg's] mistakes."

18.    Defendants have never been held effectively accountable for their admitted "mistakes."

19.    Instead, when Defendants were on the verge of losing a lawsuit, they would settle the lawsuit, and then continue engaging in the very same unlawful conduct.

20.    Defendants malicious, deceptive, intentional, reckless, and dangerous actions and inactions caused Plaintiff to suffer great and continuing monetary, reputational, and emotional harms.

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

21.    By casting Plaintiff in a false light by grouping Plaintiff with dangerous individuals and entities who were also permanently banned from when they maliciously permanently banned Plaintiff from using Meta's platforms without offering a single reason for so doing.

22.    Defendants intentionally, maliciously, and recklessly engaged in the theft and monetization of Plaintiff's personal information   and used it   to unjustly enrich themselves and sabotage elections.

23.    By its actions and inactions, Defendants violated Plaintiff's federal and state First, Fourth, and Fourteenth Amendment constitutional rights.

24.    Among other important things, the First Amendment holds that all persons have free access to public places where they can assemble, listen to others, speak their out and participate in free and fair elections. These and other foundational American rights were revoked from Plaintiff by Defendants without any reasons having been given when they permanently banned Plaintiff from using Meta's Platforms.

25.    Defendants actions and inactions also violated Plaintiff's federal and state Fourth Amendment privacy rights by conducting approximately   20-years of warrantless surveillance of him without his knowledge or consent, and by intentionally allowing thousands of third-parties to access his personal information without bothering to seek his authorization and without his knowledge or consent.

26.    Defendants by their actions and inactions deprived Plaintiff of his liberty and property without notice or due process of law, and denied him the equal protection,

privileges, and immunities granted to him by Section I of the Fourteenth Amendment to the U.S. Constitution and by California's Constitution, Art. I, 7 (a)(b), and by North Carolina's Constitution, Article 1, Section 19.

27.  Defendants actions and inactions failed to protect Plaintiffs personal information from theft and use by third-parties, and by supplementing and aggregating Plaintiff's personal information without his knowledge or consent used his personal information to enhance their targeted ad space sales business.

28.  Defendants continuing to use and profit from Plaintiff's personal information after revoking Plaintiff's Meta Platforms account, and by diminishing the value of Plaintiff's personal information because it is no longer private and is readily available to all sorts of third-parties throughout the world.

29.  Plaintiff's personal information has been abused and misused by Defendants and is still vulnerable to future abuse and misuse and there is no way Plaintiff can secure his personal information or protect it from future misuse and abuse. because neither Defendants nor Plaintiff have any way to learn who has accessed Plaintiff's personal information or how it has been or will be used and abused.

30.  Believing Defendants information privacy promises, Plaintiff shared his personal information with thousands of his Meta Platforms "Friends."

31.  Defendants officially encouraged amassing Meta Platforms "Friends" because, among other things, the more Meta Platforms "Friends" a Meta Platforms user had, the

more user action there was on Meta Platforms and that served to boost Meta Platforms' revenue and profits.

32.    Plaintiff's Meta Platforms "Friends" are persons and entities that are Meta Platforms users that have agreed to receive messages from Plaintiff, and respond to those messages.

33.    Plaintiff lost his  opportunity to acquire new Meta Platforms "Friends," and to communicate with thousands of his then existent Meta Platforms "Friends," and to support his favored political candidates, and to use his Meta Platforms as his primary resource for promoting his non-violent political ideas, political books.

34.    After permanently revoking Plaintiffs access to his Meta Platforms account, Defendants admitted that they granted  access to Plaintiffs personal information to numerous third-parties without Plaintiffs knowledge or consent.

35.    Zuckerberg has admitted Defendants had erroneously permanently revoked user accounts, but never admitted the number of Meta Platforms accounts that were erroneously revoked or the reasons for the permanent account revocations, or if Defendants ever attempted to assess the damages they caused to those whose accounts were erroneously revoked or pay the victims for the damages they caused.

36.    Unrestrained by anyone or anything, Zuckerberg micro-managed every decision that would impact Meta Platforms' growth and profitability without regard to whether his decision-making involved law-breaking and placing  Plaintiff in danger.

37.     Zuckerberg ordered his employees to "Move fast and break things" and by following Zuckerberg's order were a direct cause of Plaintiff's long-term severe economic, reputational, and emotional injuries.

## JURISDICTION AND VENUE

38.     **Jurisdiction:** This Court has original jurisdiction over the action pursuant to 28 U.S.C. § 1331 as the action involves allegations of violations of the U.S. and state constitutions.

39.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), as the amount in controversy exceeds $75,000.00 and supplemental jurisdiction pursuant to 28 U.S.C. §1367.

40.     Diversity jurisdiction is established pursuant to 28 U.S.C. §§ 1331 and1332 because Plaintiff resides in North Carolina, and Defendants do a substantial amount of business in Washington D.C. and North Carolina.

41.     Moreover, Federal courts always have the authority to determine whether they have the jurisdiction to hear a particular case. *U.S. v. Ruiz*, 536 U.S. 622, 628 (2002) (citing *U.S. v. Mine Workers of Am*, 330 U.S. 258,291 (1947).

42.     **Venue:** Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(e) because Defendants do a substantial amount of business, lobbying, and litigation in this Judicial District.

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

43.    Venue is also proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the conduct and events such as Defendants joint actions with the U.S. Government and the Trump presidential campaigns, law making, lobbying, and the congressional testimony of Zuckerberg and other Defendants executives occurred in this Judicial District.

44.    This action is brought pursuant to the U.S. Constitution, and the Federal judicial powers in this Judicial District and is authorized by Article III, section 2 of the U.S. Constitution, which extends that power to all cases arising in equity as here under the U.S. Constitution.

45.    The grant of equitable jurisdiction requires Article III courts to apply the underlying principles of the U.S. Constitution to new circumstances unforeseeable by the Framers off the U.S. Constitution.

## PARTIES

46.    Plaintiff repeats and re-alleges all of the paragraphs throughout this Complaint as if fully set forth herein.

47.    The Plaintiff will be 83-years-old in October 2023, and is a registered voting voter, and veteran with a variety of infirmities who resides in Hampstead, North Carolina.

48.    Plaintiff has written three politically oriented books that set out non-violent legislative ideas for the U.S. The books are entitled Meta*capitalism* (1985), the *American Challenge* (2005), and *Common Sense* (2016) available online free.

49.    Plaintiff was a grassroots candidate for the U.S. Senate, finishing second of eight

primary candidates and losing to a well-heeled, multi-term, favorite son incumbent.

50.    Plaintiff's political activities and books demonstrate that he has been deeply

involved in U.S. politics for over forty years without a single negative comment prior to

Defendants permanent ban on his use off Defendants platforms.

51.    Plaintiff created his personal account with Defendants account on or about 2007.

52.    Plaintiff accessed his account with Defendants from a personal computer and does

not recall specific details regarding the account registration process, nor does he recall

being prompted to read the "Terms of Service" or the "Data Policy" during the

registration process.

53.    Plaintiff does not recall seeing updates to the "Terms of Service" or the "Data

Policy" since registering for his account and he did not subscribe to, and has never visited,

and was not aware of a Defendants "Site Governance Page."

54.    Plaintiff shared private content and information, including personal information,

posts, and" Likes," with a non-public audience such as "Friends Only."

55.    Plaintiff expected Defendants to protect and secure his its personal information

against access and use by unscreened third-parties.

56.    Plaintiff was promised by Defendants that his personal information would not be

disclosed by Defendants to unscreened third-parties such as application developers,

Defendants "Business Partners" such as Apple, Amazon, and Samsung, and Defendants advertisers; political campaigns, fund raisers, or anyone else.

57.     Plaintiff was not aware of and did not understand that Defendants would allow unscreened third-parties to obtain his personal information and use it to construct a psychographic profile for the purpose of attempting to manipulate his voting decisions and purchasing decisions.

58.     Plaintiff was not aware of and did not understand that Defendants would allow thousands of unscreened third-parties to access his personal information and combine it with personally identifiable information from non-Defendant sources to create a profile other than the one Plaintiff created when he opened his personal account with Defendants.

59.     If Plaintiff had learned what he knows now about Defendants multi-faceted use and abuse of his personal information he would not have contracted to use Defendants platform..

60.     When Plaintiff learned of the lawsuits alleging Defendants extensive intentional misconduct he decided to sue Defendants, but his original Complaint was put on hold until a class action lawsuit against Defendants was settled.

61.     Plaintiff believes that his personal information was shared with and then misused by an application called "This Is Your Digital Life."

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

62.    Plaintiff was not aware of and did not consent to the sharing of his personal information with the "This Is Your Digital Life" application, or any other third- party application.

63.    Plaintiff did not consent to unscreened third-parties accessing his personal information through his Defendants-based "Friends" and had no knowledge that Defendants had authorized the disclosure of his personal information without his consent.

64.    As a result of the release of Plaintiff's personal information and his permanent ban from the use of Defendants platform, Plaintiff has suffered economic and reputational damage, severe emotional and physical distress, including anxiety, concern, and unease because an estimated 5,000 to 10,000 third-parties accessed and used Plaintiff's personal information for improper purposes, such as election sabotage, identity theft, and other fraudulent activity as well as further intruding upon Plaintiff's private affairs and concerns, as further detailed herein.

65.    Defendant Mark Zuckerberg is Defendants CEO and operates out of its headquarters at One Hacker Way in Menlo Park, California.

66.  Defendant Meta Platforms, Inc., is a Delaware Corporation headquartered at One Hacker Way, in Menlo Park, California.

## CAUSES OF ACTION

## COUNT ONE – INVASION OF PRIVACY

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

**(Against Both Defendants)**

67.     Plaintiff incorporates by reference all paragraphs contained throughout this Complaint as though fully set forth herein.

68.     Defendants invaded Plaintiff's privacy, among other ways, by:

(1) Failing to inform Plaintiff that they had granted permission to thousands of unscreened third-parties and facilitated thousands of unscreened third-parties to harvest and use Plaintiff's personal information in any way the third-parties saw fit whether that use was lawful or unlawful.

(2) By conducting warrantless surveillance and wiretapped interceptions of Plaintiff's activities and communications.

(3) By permanently banning Plaintiff from using Defendants platforms without ever stating why they took that egregious action.

(4) By subjecting Plaintiff to psychographic marketing that exploited intimate aspects of Plaintiff's identity, including emotional and psychological manipulation.

(5) By subjecting Plaintiff to harm by spreading his personal information throughout the world.

(6) By failing to retrieve, delete, and return Plaintiff's personal information after banning him from using their platforms.

(7) By Monetizing, selling, using, aggregating, and supplementing Plaintiff's personal information without seeking his permission;

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

(8) By interfering with Plaintiff's ability to project his non-violent, pro-democracy political ideas.

(9) By limiting Plaintiff's ability to support the political candidates he favored.

(10) By limiting Plaintiff's ability to promote and sell his politically-oriented books.

(11) By making it necessary for Plaintiff to bring this lawsuit in order to address the shockingly intentional, serious, and malicious harms Defendants has inflicted on him.

69.    With actual malice and forethought, Defendants surveilled, tracked, wiretapped, and intercepted Plaintiff's activities and communications for approximately fifteen years and still are.

70.    Defendants unlawful conduct is intentional and shockingly reckless violations of Plaintiff's Federal and state Fourth and Fourteenth Amendment rights to privacy.

71.    Even though Defendants were aware as early as 2014 that Plaintiff's personal information was being used, abused, and sold by thousands of unscreened third-parties including those involved in the Cambridge Analytica Scandal, Defendants intentionally failed to discourage the third-parties from using Plaintiff's personal information and thereby encouraged future abuses that caused Plaintiff short-and-long-term continuing harms.

72.    Defendants have intentionally created and implemented business policies and practices that benefit only Zuckerberg and his businesses at the expense of Plaintiff's privacy and safety including the constant surveillance of him and treating him with disdain.

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

73.     Defendants in violation of Plaintiff's privacy allowed access to and use of Plaintiff's personal information to at least millions of advertising customers who had purchased advertising space from Defendants, and an estimated 5,000 to 10,000 third-parties, and over 40,000 applications that used the thousands of Plaintiff's Meta Platforms "Friends.".

74.     In 2019 Defendants revealed they left millions of user passwords accessible to their employees in readable plain text format, thereby violating fundamental computer security practices.

75.     As a direct and proximate result of Defendants unlawful and intentional invasion of Plaintiff's privacy for profit, Plaintiff suffered and continues to suffer monetary, reputational, and emotional damages in an amount set at trial.

## COUNT TWO – CONVERSION
## (Against both Defendants)

76.     Plaintiff incorporates by reference all paragraphs contained throughout this Complaint as though fully set forth herein.

77.     Conversion is the wrongful exercise of dominion over the property of another. Here, Defendants exercised dominion over Plaintiff personal information and monetized it without even bothering to seek Plaintiff's consent to amplify the revenue and profits of Defendants.

78.     Even though Plaintiff's personal information was stored on Defendants databases, Defendants have admitted Plaintiff is the owner of his personal information.

79.     As a result of Defendants conversion of Plaintiff's information, specifically the monetization, use, sharing, selling, and trading of Plaintiff's personal information, Defendants have interfered with Plaintiff's rights to possess and control his personal information to which he had a superior right of possession at all of the relevant times the conversions occurred..

80.     Plaintiff's right of ownership of his personal information is undisputable and Defendants has admitted as much publicly when Zuckerberg admitted Defendants misappropriation of its users personal information was one of his many so-called "mistakes."

81.     To prove unlawful conversion it is not necessary that there be a manual taking of Plaintiff's property; it is only necessary to show an assumption of control or ownership over Plaintiff's property, and/or that Defendants has applied the Plaintiff's personal information to Defendants own use.

82.     Any act of dominion wrongfully exerted over the personal property of another is inconsistent with the owner's rights thereto constitutes conversion, and as conversion is a strict liability tort, the foundation of the action rests neither in the knowledge nor the intent of the Defendants.

83.     Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of Defendants good faith, lack of knowledge, and motive, if ever so stated, are immaterial.

84.     As the result of Defendants intentional, malicious, and recklessly unlawful conversion of Plaintiff's personal information, Defendants have intentionally and recklessly interfered with Plaintiff right of possession and control of his personal information and unjustly enriched themselves by so doing.

85.     As a direct and proximate result of Defendants maliciously intentional conversion of Plaintiff personal information, Plaintiff has suffered and continue to suffer monetary, reputational, and emotional damages and therefore seeks monetary damages in an amount set at trial.

## COUNT THREE – FRAUDULANT MISREPRESENTATION
### (Against Both Defendants)

86.     Plaintiff incorporates by reference all paragraphs contained throughout this Complaint as though fully set forth herein.

87.     Defendants  stored Plaintiff's  personal information in its databases and knowingly represented to Plaintiff that his personal information would remain private, and that Plaintiff could control who viewed his personal information through their privacy settings and then turned around and gave access to and use of Plaintiff's

personal information to thousands of unscreened third-parties without Plaintiff's consent.

88.    Plaintiff suffered grievous emotional and physical injuries, monetary, property, reputational loss as the proximate result of Defendants intentional negligent misrepresentations to them.

89.    In particular, Plaintiff's personal information was intentionally misappropriated by Defendants and is in the hands of countless, but not less than thousands of unscreened third-parties, domestic and foreign, who will and have used it for their own advantage, and Plaintiff's personal information is still being sold, traded, and shared making it clear that Plaintiff's personal information has considerable tangible value as verified by *The Economist* magazine that declared that nowadays" information is more valuable than oil."

90.    Plaintiff justifiably relied on the representations Defendants made in its privacy policies and elsewhere that it would "…not share information we receive about you with others unless we have: received your permission and given you notice."

91.    As alleged throughout this Complaint, Defendants knew the falsity of their privacy protection representations, which were made by Defendants intentionally with personal knowledge and intent to deceive Plaintiff into supplying Defendants with private confidential personal information, which Defendants then proceeded to monetize by selling, using, trading, and sharing Plaintiff's personal information to

attract advertisers who sought the efficiencies of targeted advertising that Meta Platforms' vast store of personal information provided.

92.     Plaintiff suffered harm as a proximate result of Defendants deceptive intentional misrepresentations with personal knowledge and intent and is therefore entitled to monetary damages in an amount set at trial.

## COUNT FOUR-FRAUDULENT BREACH OF CONTRACT
## (Against Both Defendants)

93.     Plaintiff incorporates by reference all paragraphs contained throughout this Complaint as though fully set forth herein.

94.     At all relevant times, Defendants and Plaintiff mutually assented to and were bound by the version of Defendants "Statement of Rights and Responsibilities" or later, the "Terms of Service," that were operative at the time Plaintiff contracted to use Defendants platforms.

95.     Defendants affirmed that they would not use, share, sell, or trade Plaintiff's personal information with any unscreened third-parties, including those who purchase advertising space and/or surveillance services form Defendants without first obtaining Plaintiff's consent, nor did Plaintiff agree to share the personal information Plaintiff shared with his Meta Platforms-based "Friends," or with any third-party without Plaintiff's consent that was never given.

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

96.    Defendants also failed to honor its commitment to respect Plaintiff's privacy settings, especially with respect to those applications Defendants "Whitelisted," which could easily bypass Plaintiff's privacy settings.

97.    Also in violation of their contract with Plaintiff, Defendants allowed thousands of unscreened third-parties who made their applications available to Defendants via Graph API v1.0 to sell the Plaintiff's personal information their applications had collected.

98.    There is a considerable market for Plaintiff's personal information and Defendants have received hundreds of billions of dollars from using personal information in their targeted advertising and commercial surveillance businesses.

99.    The ever-increasing volume of its users personal information that Defendants have amassed, and a thriving Black Market for such information, over time has exponentially increased the monetary gains Defendants has received from their breach of their contracts with Plaintiff and billions of others.

100.    From 2007 to the present day and in the foreseeable future, Defendants vastly increased its revenue and profits by intentionally, deliberately, recklessly, oppressively, maliciously, and dangerously failing to abide by Defendants oft repeated promises to protect Plaintiff's personal information from personal information plunderers and to not use, share, trade, or sell Plaintiff's its users personal information with thousands of unscreened third-parties without Plaintiff consent, which was never given.

101.    Defendants intentionally failed to protect Plaintiff's its users personal information and instead continuously facilitated the spread of Plaintiff's its users personal information throughout the world for well over a decade and continues to do so.

102.    Since its founding in 2004, Defendants has affirmed that its primary mission was to "connect the entire world," and has obviously intentionally failed in that mission by permanently revoking Plaintiff's Meta Platforms account without stating why they revoked his account.

103.    As a direct and proximate result of Defendants permanent revocation of Plaintiff's Meta Platforms account, conversion of Plaintiff's property, and its unwarranted surveillance and wiretapped interceptions of Plaintiff's activities and communications, and use of Plaintiff's personal information in presidential election sabotage, and in Defendant's facilitation of the failed U.S. insurrection on January 6, 2021, Plaintiff suffered and continues to suffer monetary, reputational, and emotional and physical damages in an amount set at trial.

## COUNT FIVE - INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS

### (Against Both Defendants)

104.    Plaintiff incorporates by reference all paragraphs contained throughout this Complaint as though fully set forth herein.

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

105.    Defendants knew and were indifferent to the fact that permanent revocation of Plaintiff's Meta Platforms account would cause Plaintiff undue harms.

106.    Defendants facilitation of U.S. presidential election sabotage, Defendants conversion of Plaintiff's property, Defendants invasion of Plaintiff's privacy, Defendants warrantless surveillance of Plaintiff and interception of his activities and communications, and Defendants censorship of Plaintiff's non-violent speech violated Plaintiff's constitutional rights, and cause Plaintiff severe emotional and physical distress.

107.    Defendants intentional unlawful conduct was not only unlawful, but also malicious, dangerous, outrageous, and well beyond the bounds of decency, but was also clearly well within the bounds of Zuckerberg's policy as communicated to his employees **"To move fast and break things. Unless you are breaking stuff, you are not moving fast enough."**

108.    Plaintiff justifiably relied on the material representations Defendants made in Defendants Contracts with Plaintiff and Defendants mission "to connect the world."

109.    Defendants knew the falsity of their representations that were made to deceive Plaintiff into supplying his personal information to Defendants, which was subsequently used by Defendants to accomplish all of the unlawful purposes alleged throughout the Complaint.

110.    As a direct and proximate result of Defendants permanent revocation of Plaintiff's Meta Platforms account, Defendants conversion of Plaintiff's property (his personal

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

information), Defendants unwarranted surveillance of Plaintiff and interception of his activities and communications, Defendants participation in presidential election sabotage, and Defendants facilitation in the attempted U.S. insurrection on January 6, 2021, Plaintiff suffered and continue to suffer monetary, reputational, and severe emotional and physical damages in an amount set at trial.

## COUNT SIX-VIOLATIONS OF THE FEDERAL WIRETAP ACT
### (Against Both Defendants)

111.    Plaintiff incorporates by reference all paragraphs contained throughout this Complaint as though fully set forth herein.

112.    The Federal Wiretap Act, 18 U.S.C. §§ 2510-2522 prohibits the interception and disclosure of wire, oral, and electronic communications and provides a right of action to any person whose wire or electronic communication is intercepted.

113.    Defendants users filed a class action lawsuit in the Northern District of California alleging that Defendants conduct violated the Federal Wiretap Act, the Stored Communications Act , the Computer Fraud and Abuse Act, and California's common law and statutes.

114.    In *In re Facebook Platforms, Inc. Internet Tracking Litig.,* 956 F. 3d 589, 608 (9th Cir. 2020) the U.S. Court of Appeals for the Ninth Circuit held that Defendants are not exempt as parties who intercepted the communication from liability as a matter of law under the Federal Wiretap Act or the California Invasion of Privacy Act.

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

115.    *In re: Facebook Platforms, Inc. Internet Tracking Litigation* was an invasion of privacy action brought against Defendants to challenge the company's use of "cookies" to track Defendants users and non-users even after the users had logged off the Defendants platform. Eventually, the class action lawsuit was settled with Defendants paying $90 million to the class action Plaintiff and additional millions in attorney fees and costs.

116.    Defendants appealed to the U.S. Supreme Court and were rebuffed, and thereafter Defendants decided not to defend against wiretapping charges in the future.

117.    Besides directly intercepting Plaintiff's activities and communications, Defendants partnered with PenLink, the free world's largest private wiretapping company, by supplying that company with vast quantities of its users personal information that PenLink used in its wiretapping activities.

118.    Defendants wiretapping activities were significantly enhanced by their use of "cookies."

119.    A "cookie" is a small text file that Defendants create and sends to a browser that stores files in a particular directory on an individual's computer. Defendants cookies come in two flavors.

120.    The first flavor is a "session cookie" that is set when a user logs into a Defendants platform. Session cookies are supposed to be deleted when a user logs out of the Defendants platform.

121.    The second is a "tracking cookie," also known as a "persistent cookie," which uses Defendants "Like" buttons placed on other websites to track which websites a Defendant's user visits as they surf the Internet. The tracking cookie sends information back to Defendants any time the Defendant's user accesses a page with the Defendant's "Like" button.

122.    Tracking cookies are not deleted when a Defendants user logs out. In fact, Defendants sets these cookies on an individual's computer whether or not they have a Defendants account.

123.    One such tracking cookie is called a "datr" cookie. When a logged-out Defendants user visits a website that includes a Defendant's "Like" button, such as the CNN homepage, the CNN server responds with the file for the CNN homepage that also contains embedded code from Defendants.

124.    The Defendants user's browser, triggered by the Defendants code, sends a request to the Defendants server to display the Defendants "Like" button on the page. This request contains information from the user's "datr" cookie as well as details of the specific webpage that the user accessed. When Defendants receive this information its server adds it to its database records for the browser and the user, which enables Defendants to build a profile of the individual user's browsing habits over time.

125.    Plaintiff alleges that Defendants tracked and intercepted their private activities and communications in precisely the same way as set out in the *In Re Facebook Platforms, Inc. v. Internet Tracking Litig.* class action lawsuit.

126.    As a direct and proximate result of Defendants countless violations of the Federal

Wiretap Act  Plaintiff suffered and continue to suffer monetary, reputational, emotional,

and physical damages in an amount set at trial.


## COUNT SEVEN - UNJUST ENRICHMENT
### (Against Both Defendants)

127.    Plaintiff incorporates by reference all paragraphs contained throughout this
Complaint as though fully set forth herein.

128.    As alleged throughout this Complaint, Defendants obtained monetary and other

benefits from Plaintiff under unjust circumstances with intentional and fraudulent

personal knowledge and intent that make it inequitable and unjust for Defendants to

retain these unjustly obtained monetary benefits.

129.    Therefore, Plaintiff is entitled to restitution, a remedy that is awarded by courts to

prevent unjust enrichment when the defendant has obtained monetary benefits from a

plaintiff through fraud, duress, conversion, or similar misconduct.

130.    Specifically, by engaging in unlawful conduct and by Defendants repeated failure

to remedy their unlawful conduct, Defendants have been enriched by the monies they

received from Defendants customers and from allowing thousands of unscreened third-

parties who accessed and used Plaintiff's personal information.

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

131.    Defendants failed to obtain consent from Plaintiff for granting access to their personal information to thousands of unscreened third-parties that had access to it and could harvest it and use it to satisfy their own purposes.

132.    Moreover, Defendants lied to Plaintiff when they stated that Plaintiff could control access to his personal information and have been substantially unjustly enriched because they intentionally failed to protect Plaintiff's personal information as they had often promised to do, and instead encouraged thousands of unscreened third-parties to access, harvest and use Plaintiff's personal information or their own purposes even if those purposes were illicit such as the sabotage of elections.

133.    By engaging in the unlawful conduct alleged throughout this Complaint both before and after Defendants banned Plaintiff from using his Meta Platforms account and failing to return Plaintiff's personal information, Defendants have knowingly obtained monetary benefits by way of Plaintiff, including Defendants use of Plaintiff's personal information in their enormously profitable bevy of businesses under circumstances that make it inequitable and unjust for Defendants to retain these revenues and profits.

134.    Moreover, Defendants continue to be unjustly enriched by engaging in the unlawful acts and failures to act alleged throughout the Complaint, including the fortune Defendants have accumulated, by a substantial increase in the share price of Defendants, and the savings in costs that Defendants should have been expended to

honor Plaintiff's contract and other obligations promised to Plaintiff. See *Restatement (Third) of Restitution and Unjust Enrichment* § 39(1) (2011).

135.    Plaintiff seeks restitutional monetary damages in an amount set at trial.

## COUNT EIGHT – VIOLATIONS OF PLAINTIFF'S CONSTITUTIONAL RIGHTS
### (Against Both Defendants)

136.    Plaintiff incorporates by reference all paragraphs contained throughout this Complaint as though fully set forth herein.

137.    Defendants intrusions upon the private and business affairs of Plaintiff were unlawful, unconstitutional, long-term, substantial, and ongoing.

138.    These intrusions would be considered egregious to a reasonable person and constitute an outrageous breach of normative behavior with intentional fraudulent personal knowledge and intent as evidenced by, among other things, the intense public outcry and the many domestic and foreign investigations and civil lawsuits in response to Defendants intrusions of the privacy rights of Plaintiff and billions of others.

139.    Defendants dangerously unlawful conduct is especially egregious and offensive because they repeatedly and intentionally misrepresented their policies and practices

regarding personal information sharing to Plaintiff and deceptively omitted material information concerning Plaintiff's ability to control access to his personal information.

140.    Defendants also misled Plaintiff into believing he could control who accessed his personal information and proceeded to aggressively use, share, trade, and sell Plaintiff's personal information with thousands of unscreened third-parties including the FBI and NSA, and used Plaintiff's personal information to promote and amplify Mets Platforms' targeted advertising, surveillance, and information brokerage businesses.

141.    Moreover, Defendants intrusion into  Plaintiff's personal affairs included Defendants permanent revocation of Plaintiff's Meta Platform account without ever citing a specific reason for so doing, an outrageous action which diluted Plaintiff's ability to participate as fully as he had wished to do in U.S. elections and to express his non-violent political ideas.

142.    That permanent banning without reason also intentionally maligned Plaintiff's sterling reputation by placing him in the company of far-right domestic purveyors of violence, foreign terrorist organizations, and other despicable persons, and organizations.

143.    Plaintiff is a veteran who ran a grassroots U.S. Senate campaign against a well-heeled incumbent and not one single derogatory comment was made about him by the incumbent, or any other person, organization, or by the media.

144.    Defendants intrusive, and dangerously unlawful conduct can be traced to Zuckerberg's policy guidance as directed to his approximately 50,000 employes. That

policy guidance was "To move fast and break things. Unless you are breaking stuff, you are not moving fast enough."

145.    Defendants actions and inactions destroyed Plaintiff's ability to function as a publisher of books and his sterling reputation. Even the likes of terrorists, illicit drug and weapons sellers, child abusers, and an autocratic, anti-democratic former president who planned and then incited the January 6, 2021 failed U.S. insurrection were not permanently banned from using the Defendant's platforms.

146.    Plaintiff seeks appropriate relief for the injuries intentionally inflicted upon him by Defendants, including but not limited to damages that will reasonably compensate him for the harm to his privacy and other constitutional rights, risks of future harm, and the physical and emotional injuries caused by Zuckerberg's directive to his 50,000 employees to "Move fast and breaking things," and by Zuckerberg's seemingly unquenchable thirst for ever-increasing power and profit regardless of how it negatively impacts users and non-users and erodes the foundations of democracy here and abroad.

147.    Zuckerberg has often boasted that he offers Meta Platform' users a free facility for communications of all kinds and has also boasted that Defendants function more like a government than a corporation, even conducting the warrantless surveillance of billions of the world's citizens and cooperating with the NSA's and the FBI's surveillance of our nation's citizens and organizations.

148.    Among the Defendants other false promises and contractual obligations, Defendants promised that its users can use its platforms to debate religion and politics,

yet Plaintiff was precluded from doing just that, when, without a single solitary reason having been given, Defendants permanently banned Plaintiff from using their platforms.

149.    The Fourth and Fourteenth Amendments to the U.S. Constitution, as well and 42 U.S.C. § 1983 protect Plaintiff's privacy and political speech from censorship and Defendants surveillance, tracking, wiretap interceptions, and intentional unlawful use and unauthorized monetization of Plaintiff's personal information.

150.    Defendants acted deceptively, intentionally, recklessly,  maliciously, and unlawfully and with fraudulent intent, individually and in concert, directly and indirectly, and motivated by their greed and political ideologies to invade Plaintiff's privacy and revoke his  constitutional rights to fully participate in free and fair elections while Defendants engaged in the facilitation of the sabotage of U.S. presidential elections and the failed U.S. January 6, 2021 insurrection.

151.    Defendants also violated Plaintiff's First, Fourth, and Fourteenth Amendment rights when they discriminated against Plaintiff by permanently banning him from accessing his Meta Platforms account without prior warning and for no expressed reason whatsoever.

152.    The unconstitutional censorship of  Plaintiff's political speech, which cancelled Plaintiff's ability to communicate with his thousands of Meta Platforms' "Friends," and also obliterated Plaintiff's  right to express and promote his  non-violent political ideas and to otherwise advertise and market his political and non-political books to his

accumulated thousands of his Meta Platforms-based "Friends."

153.    Defendants conducted these unconstitutional activities after repeatedly bragging publicly and privately that their mission is to enable the citizens of the planet to freely communicate with one another.

154.    Zuckerberg has admitted he and other Meta Platform executives were aware of the spread of Russian propaganda on Defendant's platforms and did nothing to prevent it, instead pocketing Russian rubles and other currency from to sale of advertising space to Russian intelligence agents and operatives.

155.    Plaintiff had a reasonable expectation and planned to use his Meta Platforms account to communicate with his thousands of Defendants "Friends" and to promote and advertise his non-violent political ideas and politically-oriented books, and receive messages and book orders from his Meta Platforms-based "Friends."

156.    A massive public outcry followed the revelation of Defendants unconstitutional and other tortious practices that eventually led to multiple ongoing foreign and domestic investigations of Defendants by governmental regulators and legislators and numerous private lawsuits.

157.    Plaintiff was harmed and will continue to be harmed by the Defendants intrusion into Plaintiff's private affairs as have been alleged throughout this Complaint and by Defendant's active participation in the successful sabotage of the U.S. presidential and other elections.

158.    In late May 2019, Monica Bickert, Defendant's V.P. Product Policy, publicly

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

defended Defendants having allowed a doctored derogatory video of House Speaker Nancy Pelosi, to run on Defendants' platforms, stating "Defendants will continue to host a video of Nancy Pelosi that has been edited to give the impression that the Democratic House speaker is drunk or unwell." The Pelosi defamation facilitated by Defendants is but one of many such incidents that show Defendants intentional failures to deal with disinformation, misinformation, lies, and hate speech.

159.    Rudy Giuliani, the former President's personal lawyer, was among the President's supporters who promoted the derogatory Pelosi video.

160.    Giuliani tweeted a link to a copy of the Pelosi video on Defendants stating: "What is wrong with Nancy Pelosi? Her speech pattern is bizarre."

161.    One version of the doctored Pelosi video that Defendants allowed to continue running on a Defendants page is entitled "Politics WatchDog" and has been viewed millions of times, attracting comments speculating on Pelosi's health, supposed use of drugs, and other apparent ailments and ultimately led to a viscous skull destroying attack on Pelosi's husband by a domestic terrorist.

162.    Alarming concerns have been raised about the enormous impact of the future use of disturbingly realistic fake or doctored videos by election riggers and other miscreants as facilitated on Defendants platforms.

163.    In addition to suffering the tortious conduct of Defendants, Plaintiff had a reasonable expectation of privacy when using Defendant's platform; and had a reasonable expectation that Defendants would not participate with Russian operatives,

the Trump Campaign, Jared Kushner, Steve Bannon, Robert Mercer, and others in conduct that eventually led to the successful sabotage of the 2016 U.S. primary and general presidential elections.

164.    With Defendants knowledge and forethought, thousands of unscreened third-parties harvested Plaintiff's personal information  from Defendant's personal information  repository without Plaintiff's knowledge or authorization and by doing so intentionally intruded into Plaintiff solitude, seclusion, and private affairs.

165.    Defendants intentionally established policies and procedures governing the Defendants platforms use in such a way so as to readily enable the personal information plundering without any authorization from Plaintiff.

166.    The thousands of  privacy intrusions by unscreened third-parties as encouraged by Defendants are highly offensive to Plaintiff..

167.    Public outrage is evidenced by the immense public outcry following the revelation of Defendants failure to protect the privacy of its users' personal information when the Cambridge Analytica Scandal became public knowledge.

168.    Further, the extent of the intrusions on Plaintiff's constitutional and contractual rights and the extent to which his personal information  was used will never be fully known because  such intrusive conduct involves Defendants sharing Plaintiff personal information  and that of his Meta Platforms-based "Friends" with thousands unscreened third-parties for unknown purposes previously and into the future.

169.    During the 2016 U.S. presidential elections American voters received more fake

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

news than factual news over Defendant's platforms and the Trump Campaign teamed up with Defendants to sabotage 2016 and 2020 presidential elections.

170.    The sabotage of the U.S. presidential elections was conducted in tandem by the Trump Campaign and Defendants. Defendants provided the Trump Campaign with technological expertise by assigning its employees to work with Campaign officials with unlimited access to its platforms to send countless political messages and advertisements to susceptible voters that were identified by the Campaign's use of the Defendants personal information provided for its use to the Trump Campaign.

171.    By conspiring to sabotage U.S. presidential elections the Defendants violated Plaintiff's constitutional right to participate in free and fair elections.

172.    As a direct and proximate result of Defendants coordinated efforts with the Trump Campaign to sabotage U.S. presidential elections, and Defendants permanent revocation of Plaintiff's personal Meta Platforms account, and Defendants surveillance, tracking, and wiretap interceptions of Plaintiff's personal activities and communications, censorship of Plaintiff's political and non-political non-violent speech, invasion of Plaintiff's privacy, interference of Plaintiff's political participation in U.S. elections, Defendants' facilitation of U.S. election sabotage, and Defendants' facilitation of the failed U.S. insurrection on January 6, 2021, Plaintiff suffered and continues to suffer monetary, reputational, emotional and physical damages in an amount set at trial.

## COUNT NINE-COMMON LAW CIVIL CONSPIRACY
### (Against Both Defendants)

173.    Plaintiff incorporates by reference all paragraphs contained throughout this Complaint as though fully set forth herein.

174.    The basis of a civil conspiracy is the formation of a group of two or more people who have agreed to a common plan or design to commit a tortious act.

175.    The conspiring conspirators must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose

176.    A conspiracy may be inferred from circumstances, including the nature of the acts done, the relationships between the parties, and the interests of the alleged co-conspirators.

177.    Defendants knew and have admitted that they knew that Defendants were deliberately and for their own profit and other purposes allowed thousands of unscreened third parties to access and collect Plaintiff's personal information without his consent, and that Defendants' information security measures were so grossly inadequate that malevolent third parties could also access and collect Plaintiff's personal information.

178.    Nevertheless, Defendants continued to recklessly ignore their information security problems and instead did little to nothing to protect Plaintiff's personal information or even bother to warn Plaintiff about the security problems and, instead, openly lied to

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

Congress and foreign governments that Defendants were dedicated to the highest and most advance security practices and protocols.

179.    Defendants intentionally opted to not disclose to Plaintiff that his account and associated personal information were and still are an easy target for information plunderers and that Defendants were not implementing measures to protect Plaintiff.

180.    Defendants conspired among themselves and with others, including the Trump campaign, Robert Mercer and Russian officials, agents and operatives to act in concert for unlawful purposes by unlawful means.

181.    In particular, Defendants and their co-conspirators agreed to publicly disclose on the Internet and elsewhere Plaintiff's personal information and that of their Meta Platform-based "Friends" that were plundered from Defendants by Cambridge Analytica, a now bankrupt business entity funded, directed and controlled by Robert Mercer and deliberately allowed third parties to access and collect Plaintiff's personal information without Plaintiff's consent or knowledge.

182.    Defendants conspiratorial conduct violated civil conspiracy law that maintains that a conspiracy is an agreement by two or more persons to commit a wrongful act.

183.    Such an agreement may be made orally or in writing or may be implied by the conduct of the parties. A conspiracy may be inferred from circumstances, including the nature of the acts done, the relationships between the parties, and the interests of the alleged co-conspirators.

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

184.    While criminal conspiracies involve distinct substantive wrongs, civil conspiracies do not involve separate torts. Civil conspiracy doctrine provides a remedial measure for affixing liability to all persons who have 'agreed to a common design to commit a wrong.

185.    As long as two or more persons agree to perform a wrongful act, the law places civil liability for the resulting damages on all of them, regardless of whether they actually commit the tort themselves.

186.    The effect of charging conspiratorial conduct is to implicate all who agree to the plan to commit the wrong as well as those who actually carry it out.

187.    Conspiracy is a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.

188.    By participation in a civil conspiracy, a co-conspirator effectively adopts as his or her own the torts of other co-conspirators within the ambit of the conspiracy. In this way, a co-conspirator incurs tort liability co-equal with the immediate tortfeasors.

189.    As a direct and proximate result of the overt and covert acts of Defendants, Plaintiff has sustained significant harm, entitling him to recover damages in an amount to be established at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, in accord with the above, Plaintiff respectfully requests the following relief:

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

190.    Plaintiff requests this Court to enter judgment in his favor and against Defendants, as follows:

191.    Enter judgment against Mark Zuckerberg and Meta Platforms, Inc. on each of Plaintiff's nine causes of action, and award such monetary awards as awarded by the jury, including actual and statutory damages, restitution, disgorgement, and exemplary or punitive damages.

192.    Award all costs, including experts' fees and attorneys' fees, if any, as well as the costs of prosecuting this action; pre-judgment and post-judgment interest as prescribed by law; and grant additional legal and equitable relief as the Court may find just and proper.

193.    Permanently enjoin Defendants from using Section 230 as an affirmative defense.

194.    Declare Section 230 unconstitutional.

195.    Order Defendants to immediately remove the pedophile network from its platforms and all other harmful material, especially material harmful to children.

196.    Afford Plaintiff such other relief as this Court deems appropriate.

Dated: July 17, 2023

_____

Robert Zimmerman

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.

## DEMAND FOR JURY TRIAL

197.    Plaintiff hereby respectfully requests a trial by jury on all the counts so triable.

Respectfully submitted by:

_____

Robert Zimmerman Plaintiff   Dated: July 17, 2023

## VERIFICATION

I, Robert Zimmerman, hereby certify under penalty of perjury that to the best of my knowledge

the forgoing Complaint is true and correct.

_____

Robert Zimmerman    Dated: July 17, 2023

## CERTIFICATE OF SERVICE

Plaintiff Robert Zimmerman hereby certifies that on July 17, 2023 I mailed by prepaid first

class mail the foregoing Complaint in PDF format, a Civil Cover Sheet, and form IFP to The

Clerk of the Court at 333 Constitution Avenue N.W, Washington D.C.20001, and sent the

Complaint to Ms. Jennifer Newstead the Chief Legal Officer for Defendants, at One Hacker

Way, Menlo Park, CA  94025. Dated and signed by Robert Zimmerman on  July 17, 2023

Complaint Against Mark Zuckerberg et al for Intentional Violations of Federal and State Laws.